# SUPREME COURT.

JANE S. LIVINGSTON agt. WILLIAM SMITH and others.

Where a pleading alleges the existence of an *agreement*, which would be void if not in writing, (to purchase or convey lands,) within the statute of frauds, it should be treated in pleading like any other fact, and assumed to be true, unless controverted by the adverse party.

That is, it is not essential that the pleading should show affirmatively that the agreement (to purchase or convey lands) was in writing. It will be assumed to be an agreement having a *legal existence.*

If on an issue upon such an agreement stated in the complaint, the party does not prove his allegation by producing *written evidence* of the agreement, he must fail—not for want of sufficient allegations to sustain his action, but for the want of sufficient evidence to sustain such allegations.

*Albany General Term, December,* 1855.

WRIGHT, WATSON *and* HARRIS, *Justices.*

THIS was an appeal from an order made at a special term, allowing a demurrer to the complaint. The plaintiff stated in her complaint, that in 1849, it was agreed between her and her brother Daniel P. Southerland, now deceased, that they should purchase for their joint benefit, a certain lot of land in the village of West Troy: that the contract for such purchase should be made in the name of Southerland, but he should hold it for their joint benefit: that he did enter into a contract with Isaac

Merritt, executor, &c., of Richard P. Hart, deceased, on the 26th of November, 1849, for the purchase of the lot: that the consideration which he agreed to pay was $4,750, and the terms of payment were so arranged that the rents and profits would and did enable him to meet the payments as they became due, such rents and profits amounting to $1,200 per annum: that after he had made the purchase, Southerland repeatedly told the plaintiff he had made the purchase in pursuance of their agreement, and that he held the contract for their joint benefit: that he died on the 16th of February, 1851, and a short time before his death he offered to give the plaintiff a written acknowledgment and statement of her title, but died before doing so: that at the time of his death the whole amount of the purchase money had been paid, except about $800.

The complaint further states that Southerland having died intestate, letters of administration upon his estate were granted to Stephen S. Wandell and Albert Richards, and that on the 13th of July, 1853, the administrators obtained from the surrogate of Albany, an order for the sale of the interest of Southerland in the contract for the purchase of the lot: that the sale was made on the 8th of September following, and upon such sale the defendants William Smith and John Knower became the purchasers, for the sum of $5,060: that such purchasers, at the time they purchased, had notice of the plaintiff's claim: that the sale has been confirmed by the surrogate, and the contract has been assigned by the administrators to the purchasers: that the purchasers have paid the balance due upon the contract to the estate of Hart, and the executor of that estate is willing to convey the property to any person who may be declared to be entitled to such conveyance.

The plaintiff claimed that the executor, who is made a defendant, may be directed, by the judgment of this court, to convey the lot to the defendants Smith and Knower and the plaintiff, as tenants in common, one-half to each; that the administrators may be decreed to account for the rents and profits received, and, in case a conveyance to the plaintiff should not

be decreed, that then the administrators may be decreed to pay over to the plaintiff one-half the purchase money received by them from the defendants Smith and Knower.

To this complaint all the defendants except Merritt demurred, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer having been allowed at the special term, the plaintiff appealed from the order to the general term.

LYMAN TREMAIN, *for plaintiff.*
JOHN H. REYNOLDS, *for defendants.*

By the court—HARRIS, Justice. The great requirement of the Code, in respect to a complaint, is that it shall state facts sufficient to constitute a cause of action. The allegations must be such that the court can see that, if they are admitted or proved, the plaintiff will be entitled to judgment, unless the cause of action is overcome by some new matter of defence.

In this case, it is stated that a contract was made between the plaintiff and Daniel P. Southerland. This contract is the foundation of the action. If there be no such contract there is no cause of action. But it is a contract relating to lands. Such a contract, to be operative, must be in writing and signed by the party to be affected by it: if it be not, it is, in fact, no contract. The allegation in the complaint is untrue. The defendant has only to deny it. Regarding it, therefore, as a question of pleading, I think when the plaintiff alleges that a contract was made between her and Southerland, by which they were to become jointly interested in the purchase of the lot in question, it is to be understood that it is a *real contract*, something which the law would recognize and respect as such, and not a thing which the law, in regard to the subject to which it relates, would repudiate as nugatory and void. A deed of land, to be valid, must be subscribed and sealed: it must also be acknowledged, or else its execution and delivery must be attested by a subscribing witness. But I suppose no one ever supposed it was necessary to allege these circumstances in

pleading a conveyance of land. Why then require that, in pleading a contract within the statute of frauds, a different rule should be adopted? I can perceive no sufficient reason for departing from the well settled rule on this subject, which had long prevailed in this state, in both law and equity courts. (*Elting* agt. *Vanderlyn*, 4 *John.* 237; *Myers* agt. *Morse*, 15 *John.* 425; *State of Indiana* agt. *Woram*, 6 *Hill*, 33; *Cozine* agt. *Graham*, 2 *Paige*, 177.) The language of Chancellor WALWORTH, in the case last cited, seems to me to be as applicable to the present system of pleading, as it was to pleading in equity. "If the agreement is denied," he says, "the plaintiff must produce *legal evidence* of its existence, which can only be done by producing a written agreement, duly executed according to the provisions of the statute. If the agreement is admitted, no evidence to prove its existence is necessary, and the court never inquires whether it was or was not in writing."

I am aware that a different view of this question has been taken by the superior court of New York. In *Thurman* agt. *Stevens*, (2 *Duer*, 609,) the action was against the sureties in an undertaking executed upon an appeal from a judgment. The agreement of the defendant was set forth in the complaint, in the language of the undertaking, but it was not stated that the undertaking was in writing, and subscribed by the defendant. There was a demurrer to the complaint, on the ground that the agreement set forth was a collateral undertaking to answer for the debt or default of another, and was void by the statute of frauds. The demurrer was sustained, Mr. Justice EMMET holding that the making or existence of a writing subscribed by the party to be charged, was one of the facts necessary to constitute a cause of action, and, of course, must be stated in the complaint. In this opinion Mr. Justice DUER concurred. The case of *Leroy* agt. *Shaw*, (2 *Duer*, 626,) was decided in the same court, about the same time. The case was disposed of upon another ground, but Mr. Justice BOSWORTH has taken occasion to speak of the question now under consideration. "Whether the agreement is in writing or not," he says, "is more than a mere matter of evidence. The making of the

agreement may be established without such evidence, beyond doubt or cavil, and yet the party making it may not be liable. The making of a written agreement is an act or fact essential to the creation of liability."

But with great respect for these learned judges, I can but think they have not sufficiently considered the distinction between the facts necessary to constitute a cause of action, and the evidence which tends to establish such facts. The law knows no such thing as an agreement to answer for the debt or default of another, which is not in writing, and signed by the party to be charged. The pleader may be supposed to know that when he alleges an agreement of this description, he alleges what has no *legal existence*, if it be not in writing. In the sense in which I am now considering the question, the fact itself does not exist if there be no written proof of it. When, therefore, as in this case, the pleader alleges the existence of an agreement which would be void if not in writing, it should be treated in pleading like any other fact, and assumed to be true, unless controverted by the adverse party. If, after this issue shall be disposed of, the defendant shall see fit to put in issue the existence of the agreement stated in the complaint, the plaintiff will of course fail upon the trial of that issue, unless she can prove her allegation by producing written evidence of the agreement. She will fail, not for the want of sufficient allegations to sustain her action, but for the want of sufficient evidence to sustain such allegations.

But the learned judge who decided this case at the special term, put his decision upon the ground, not that it was necessary that it should affirmatively appear in the complaint that the agreement was in writing, but that it did in fact appear that it was *not in writing*. In this conclusion I cannot concur. It is very likely, indeed, that there was no written agreement between the parties. I am not without suspicion that it will so turn out when the facts shall appear in evidence. But upon a question of the sufficiency of a pleading, such conjectures or inferences have no place. There is nothing in the complaint at all inconsistent with the theory that an agreement was en-

tered into between the plaintiff and Southerland, with all the formalities requisite to its validity. If, upon the trial of an issue of fact, such an agreement should be produced, it would not contradict or disprove a single allegation in the complaint. I am, therefore, of opinion that the order of the special term should be reversed, and the demurrer overruled, but with liberty to the defendants to answer the complaint within twenty days after notice of this decision, upon payment of the costs of the demurrer, to be taxed by the clerk of Albany.