It appears from the judgment from which this appeal was taken, that the judgment entered at special term upon the report of the referee was reversed upon questions of fact as well as of law. It becomes the duty of this court, therefore, under the recent statute amending the Code of Procedure, to review the case, with reference to errors both of law and of fact.
The main question in the case is, whether the note upon which the action is brought belongs to the class of notes provided *Page 566 
for by section 5 of the act of 1849, to constitute a part of the capital stock of the company, and which it was held in White v.Haight (16 N.Y., 310), are payable absolutely, or to the class of ordinary premium notes, upon which the makers are only liable to be ratably assessed for losses as they occur. If the note was one of the latter class, it is not claimed that the plaintiff is entitled to recover, as no proof of any assessment, or of any of the preliminary facts essential to a recovery upon such a note, was offered at the trial. The plaintiff's case rests wholly upon the assumption, that the note was given for the purpose of making up the necessary capital of one hundred thousand dollars required by the act of 1849 before the company could commence its business.
In form, this note corresponds in all respects with those ordinarily taken by Mutual Insurance Companies, from parties insured, as a means of securing the ratable contribution of such parties to the payment of losses. This, however, although affording presumptive evidence of considerable force to show that the note was given as one of the ordinary kind, and that the only liability contemplated by the parties was a liability to be assessed for losses in common with other policy holders, is, perhaps, not conclusive. In the case of White v. Haight,supra, the note was similar in its terms. Instead of being made payable unconditionally at the end of, or within twelve months from its date according to the provisions of the act of 1849, it was, like the note in this case, to be paid "in such portions, and at such time or times as the directors of said company" might require.
The answer in that case, however, expressly admitted that the note in suit was one of those which were furnished for the purpose of complying with the requirements of the act. This admission superseded all inquiry as to the admissibility of parol evidence to vary the terms or import of the note. It being admitted that it was one of the notes contemplated by section 5 of the act, its effect was prescribed by the statute. The fact admitted in that case is controverted in this, and parol evidence was offered upon the trial for the purpose of establishing it. *Page 567 
No objection was made to the admissibility of this evidence, and none, I think, could have been sustained if made. Although the terms of the note do not conform to the provisions of the act, they are not necessarily in conflict with it. If, therefore, the evidence in this case was sufficient to establish the facts which was admitted in the case of White v. Haight, the conclusion arrived at in that case would be decisive of this. The referee thought the evidence sufficient and held the defendant liable. The court at general term thought otherwise, and reversed the judgment. It now devolves upon this court to settle this controverted question of fact.
The referee appears to have found the fact in question upon the testimony of Silas Mann, the agent of the plaintiff, who received the defendant's application and note and forwarded them to the company: and of E.J. Richardson, one of the officers of the company. Mr. Mann says that when he received the application from Mr. Knowlton, the agent of the defendant, he informed Knowlton that the company was not then organized but would be in a short time, and Mr. Richardson, testified that the note of the defendant was one of the notes presented to the commissioners, and which went to make up the one hundred thousand dollars of capital, which the company was required to have previous to commencing its business.
This evidence could scarcely be regarded as sufficient to establish the fact in controversy, even if entirely unopposed. It does not appear that the defendant was in any manner cognizant, either personally or through his agent, of the fact that the note in question was presented to the commissioners as part of the one hundred thousand dollars. That fact, therefore, can have but little, if any, weight in the case. It does not tend to show that the note was given for the purpose of being so used. Hence, the finding must rest mainly, if not exclusively, upon the testimony of Mr. Mann, that he informed the defendant's agent that the company was not yet organized. But this, if true, does not prove that the note was given as a part of the preliminary capital. The defendant, wishing to *Page 568 
insure, might very well make his arrangement in anticipation of the future organization of the company, and might, as a matter of convenience, execute his note in advance, without any view to aiding the company in its organization.
A note, given as a mere guaranty note, subject to assessment for losses, although given before the organization of the company, could not be converted into one payable absolutely, simply by its being used as a part of the required capital, without the knowledge of the maker. The statute imposes no liability irrespective of or beyond the presumed agreement of the parties. It provides for a voluntary contract, by which the maker of the note agrees absolutely to pay a certain sum, in consideration of which the company, when organized, is bound to insure for him, until the premiums upon such insurance, at the ordinary rates, shall equal the amount of the note. It is the consent of the maker which binds him; and he cannot be bound without it. The company, when it sues upon such a note, is bound to show, either by the terms of the note itself or otherwise, that the maker has voluntarily agreed to pay its amount, at all events, and irrespective of any assessment for losses. This may, no doubt, be established by simply proving, what was admitted in the case of White v. Haight, viz., that the note was given for the purpose of being used as a part of the one hundred thousand dollars; because the maker must be presumed to be cognizant of the provisions of the statute, and to have contracted with reference to them. But, until it is established, in some form, that the maker has voluntarily undertaken to pay a certain sum absolutely, for which he is to be reimbursed in premiums, there is no unconditional liability upon such a note.
No doubt the giving of a note to such a company, with knowledge that it was still unorganized, would afford some ground for the inference that the note was intended to be used as a part of its preliminary capital; and if there was nothing in the terms of the note to indicate the contrary, this might perhaps be sufficient alone to establish the fact. But, in the present case, the whole tenor of the note tends to repel any *Page 569 
such inference. It purports to be given, not in consideration of an obligation on the part of the company to insure from time to time until the cash premiums should be sufficient to repay the amount of the note, but of a single specific policy, to be issued, as appears from the application which accompanied the note, for the insurance of a single block of stores, valued at $2,000, the premium upon which, to be paid in hand, was only $9.60. Again, the note was not made payable absolutely, nor at any specific time, but "in such portions and at such time or times as the directors" might, agreeably to their charter, require.
These features characterize the note so strongly, as one intended merely as an ordinary guaranty note, subject only to assessment for losses, that nothing short of the most conclusive evidence, or of an express admission as in the case of White v.Haight, could be sufficient to establish the fact that it was intended as a note of the other class. There is clearly no such evidence in this case. The testimony is even conflicting upon the question whether Knowlton, the agent who made the arrangement for the defendant, was apprized at all that the company was still unorganized; and that is the only fact that has any tendency to meet the inference to be drawn from the terms of the note. My conclusion therefore is, that the general term was right in reversing the judgment of the special term and ordering a new trial. The defendant is, therefore, entitled to final judgment, pursuant to the stipulation of the plaintiff.
All the judges concurring,
Order granting new trial affirmed, with costs, and judgment absolute for defendant. *Page 570