## BRUSH *a.* LEE.

*Supreme Court, First District; General Term, March,* 1865.

EXECUTION ON DOCKETED JUDGMENT OF JUSTICE OF THE PEACE. —STAY OF PROCEEDINGS ON APPEAL.

Where a judgment recovered in a court of a justice of the peace is docketed in the office of a county clerk, execution thereon must be issued by the county clerk. An execution issued by the attorney of the judgment-creditor as in ordinary cases is invalid, and confers no power on the sheriff to sell.*

* Compare Carpenter *a.* Simmons, 28 *How. Pr.,* 12.

Where, on taking an appeal from a judgment recovered in a court of a justice of the peace, the appellant executed two undertakings, one containing the clause necessary to effect a stay of proceedings, and the other without such clause, and served the former on the justice, and filed the latter with the clerk:— *Held*, that proceedings were not stayed.

Appeal from a judgment.

This action was brought by Stephen Brush, executor, &c., of Robert Hyslop, deceased, against William Lee, William Edmonds, George W. Niles, and A. B. Clark. The object of the action was to set aside a sheriff's sale, and the deed pursuant to it, of the land of the plaintiff's testator, which was sold in his lifetime under an execution issued upon a judgment against him, in a former action recovered by the defendant Edmonds; upon the ground that the proceedings on the execution were stayed at the time it was issued, that the execution was void, and, also, upon the ground of fraud in conducting the proceedings to sell. The defendants set up in their answers in substance, that the proceedings on the execution were not stayed; that all the proceedings were regular and in good faith, and denied all fraud. The cause was tried before MARVIN, J., at a special term in April, 1864. The facts developed on the trial were as follows:

On the 16th day of February, 1860, Williams Edmonds, one of the defendants in this suit, recovered a judgment in the first district court of New York city, against Robert Hyslop for $82.56.

Hyslop instructed his attorneys to appeal from the judgment. The action in the District Court was tried for Edmonds by William Lee, who, though not a licensed attorney, was a lawyer, having a business connection and arrangement with the defendant Clark, who was a licensed attorney, and Clark's name as attorney was used by Lee in all the legal proceedings hereinafter mentioned after the rendition of the judgment. On the same day Niles proposed to Hyslop to settle the judgment for $50. Hyslop, after talking aside with Barrett, his attorney, refused this offer. On the same day Niles wrote a note to W. C. Barrett, one of Hyslop's attorneys, that if Hyslop desired to pay the judgment, he could do so without any execution by letting him (Niles) know to-morrow. It is added, that the note

is sent as an act of courtesy, thinking that a sheriff's call would be unpleasant to Mr. Hyslop, and also would cause a few dollars extra expense.

On the morning of February 17, 1860, George C. Barrett, one of Hyslop's attorneys, prepared and procured to be properly executed two undertakings, for the purpose of an appeal from the judgment,—one of them contained the clause necessary to stay the execution, to wit : That if judgment be rendered against the appellant, and execution thereon be returned unsatisfied in whole or in part, we will pay the amount unsatisfied. This undertaking was served on the justice of the District Court, by G. C. Barrett, and the justice endorsed his approval thereon, dated February 17.

In the other undertaking, the clause necessary to stay execution was stricken out in the printed matter, by drawing the pen through it. This undertaking was approved by the justice, and then filed with the clerk of the Court of Common Pleas of the city of New York, and marked by the clerk, filed 17th February, 1860. Barrett then returned to his office and wrote a note to Niles, that they had decided to appeal, and had filed that day the requisite undertakings to stay execution, and expressed obligation to Niles for his courtesy in not issuing execution the day before. All these things occurred before noon of that day. Niles received Barrett's note before noon. On March 6, 1860, the notice of appeal was served on the justice, and his fees were paid. This notice was signed Barrett, Brinsmade & Barrett, attorneys for appellants. Service of notice of appeal was also made on Niles, and admission made by him in the name of A. B. Clark, attorney for respondent. Edmonds was a resident of the county of Kings. This appeal was not argued until October term, 1861, when the judgment was affirmed.

Niles, on the receipt of Barrett's letter, on the 17th February, called at the office of the clerk of Common Pleas and examined the undertaking there filed, and discovered that the clause staying execution had been erased. And after this he filed the transcript and issued execution. He had at this time no notice of the undertaking delivered to the justice, except that conveyed by letter of Barrett to him, and he made no inquiry at the Justice's office. Niles, February 21, 1860, pro-

cured from the clerk of Common Pleas a certified copy of the undertaking filed in that office, a printed form, and showing the erasure, with the initials of the clerk opposite thereto.

Niles procured a transcript from the clerk's office in New York, and February 20, 1860, caused the judgment to be docketed in the county of Kings, and February 21, at three o'clock P. M., issued an execution to the sheriff of that county from the Court of Common Pleas of the city and county of New York, and in the name of Clark, as attorney. The execution recited the rendition of the judgment in the justice's court, "as appears to us by the judgment-roll filed in the office of the clerk and court in the county of New York," and the docketing of the judgment in New York, February 17, 1860.

Upon this execution, the sheriff of King's county proceeded. He advertised in due form certain real estate described in the complaint in this action belonging to Hyslop, for sale, and sold such real estate, consisting of two lots, to Edmonds, for the sum of $99.80, this being the highest sum bid, and being the amount due upon the judgment, including the costs and fees of the sheriff. Niles and Edmonds were present at the sale, and Niles made the bid for Edmonds. The sheriff executed to Edmonds the proper certificate, dated April 7, 1860. Niles paid the sheriff his fees, amounting to some $16; a few days after this, Edmonds sold and signed the certificate to the defendant, Lee, for the amount of the bid specified in the certificate; and August 2, 1861, the sheriff executed a deed of the lands sold to Lee, which he caused to be recorded December 5, 1861.

The facts relied on by the plaintiff as establishing fraud in the sale are not material to the decision, and are therefore here omitted.

The judge found for the plaintiff, and assigned his reasons for his decision in the following opinion.

MARVIN, J.—I have come to the conclusion that there was no valid stay of execution at the time the executions were issued. I think the undertaking served upon the justice was not effectual as a stay.

As to the execution, it seems to me that the law is very plain: When a judgment is docketed with the county clerk on a trans-

cript of a justice's judgment, the execution must be issued by the county clerk.   (*Code of Pro.*, § 64, subd. 13.)

The exceptions referring to section 63, had reference to the time of the commencement of the lien and the amount of the judgment to make it a lien on real property.   The object of the clause in section 68, relating to judgments docketed upon a transcript from a justice's court, filed in the office of the clerk of the county of New York, was to place the Court of Common Pleas in the same position,.and to give to such court the same jurisdiction which by sections 63 and 64 had been given to County Courts.   There is no County Court in the city and county of New York, but the old Court of Common Pleas was retained by the Constitution of 1846.   The provision relating to the issuing of execution upon judgments docketed in the county clerk's office by the clerk, is an old provision.   It is in the Revised Statutes, and it was never understood that the execution could be issued by an attorney.   It was not supposed that the parties would have any attorneys ; none were necessary for the purposes of docketing the judgment, and the clerk was required to issue the execution.   The declaration that the judgment shall be a judgment of the County Court (section 63,) or be deemed a judgment of the Court of Common Pleas of the city and county of New York (section 68), is not new.   It is taken from the Revised Statutes.

In my opinion, the executions issued by Clark, attorney, or in his name, were not authorized, and they were invalid as to Hyslop, and there is no estoppel in the case, upon him or his legal representative and devisees.

Judgment was entered pursuant to the findings.   The defendants served exceptions to the findings, and appealed from the judgment.

*Anthony R. Dyett*, for the appellants.—I. The court erred in permitting the plaintiff to falsify or at least impeach the sheriff's return.

II. The execution was perfectly regular.   1. There was no stay of proceedings under the judgment to prevent its issuing, and the judge on the trial so found, and that finding was correct.   (*Code*, § 354 ; *Ib.*, § 355 ; *Ib* ; § 357 ; Conway·*a*. Hitchins,

9 *Barb.*, 378 ; 38 *Ib.*, 238 ; 14 *Abbotts' Pr.*, 368 ; 10 *How. Pr.*, 344 ; 13 *Ib.*, 402 ; 18 *Ib.*, 261 ; 12 *Abbotts' Pr.*, 243 ; 20 *How. Pr.*, 86.) 2. The execution was proper and regular in form. It was not necessary that it should be signed or sealed by the county clerk. Section 68 of the Code applies the rules governing the docketing of judgments of justices of the peace docketed with county clerk (Sects. 63 and 64, subd. 13) to those on judgments like the present, "except that the judgment shall be enforced in the same manner as and be deemed a judgment of the Common Pleas," and that manner is by an execution similar to the one issued in the present case (*Code*, § 289 ; *Ib.*, § 283), and if enforced in any other manner, it could not be in the same manner. (1 *Code R.*, 107 ; Ginochio *a.* Figari, 4 *E. D. Smith*, 227 ; 18 *How. Pr.*, 267 ; Jackson *a.* Smith, 16 *Abbotts' Pr.*, 201 ; Carpenter *a.* Simmons, 28 *How. Pr.*, 12 ; *Cowen's Treatise*, ed. of 1856, §1570.) 3. But if the execution was irregular it was voidable and not void, and could not be attacked collaterally so as to defeat the title of the purchaser at the sheriff's sale under it. And if it had been assailed by a direct motion to set it aside, it was amendable. (*Code*, §§ 174, 176 ; 3 *Code R.*, 21 ; 5 *How. Pr.*, 381 ; 1 *Code R., N. S.*, 47.)

III. The finding of fraud is unsustained.

IV. It may be claimed (though the judge did not do so) that a court of equity could relieve in this case without the existence of any fraud. But a court has no such power. It is nowhere given in the statute. And nothing is better settled than that in the absence of fraud, a court of equity cannot relieve against the positive provisions or the consequences of a statute, however harsh the statute may be or disastrous the consequences to the party affected. That would be to usurp the powers of the Legislature, and make it subject to any court of equity. In other words, in every statute imposing by words or necessary consequences any forfeiture whatever by implication, would be added "subject to the discretion of any court of equity to modify or repeal this statute !" (*Willard's Eq.*, 40 ; *Ib.*, 41 ; Catlin *a.* Hayden, 1 *Verm.*, 375, and cases cited ; Spear *a.* Ditty, 9 *Ib.*, 282 ; Gorman *a.* Low, 2 *Edw.*, 324 ; *Story's Eq. Juris.*, §§ 14, 15, 19, 20, 21.)

V. But if the court had the power, and it was proper to relieve the plaintiff at all, it could only be done on payment of

the judgment and expenses of sale, &c., and the costs of affirmance, and the costs of this action. No tender or offer to pay the judgment below even, much less the other items, was either averred in the complaint or proved, and the judgment for this reason should be reversed or modified.

But the judgment should be reversed and a new trial ordered, with costs to abide the event.

*Barrett & Brinsmade*, for the respondents.

By the Court.—T. A. Johnson, J.—I am prepared to agree to the affirmance of the judgment, on the ground that the execution issued to the sheriff of Kings county, on which the sheriff's deed in question was founded, was wholly invalid. The Code (§ 64, subd. 13) provides how executions upon judgments like the one in this case shall be issued. "If the judgment be docketed with the county clerk, the execution shall be issued by him to the sheriff." The authority being given to the county clerk exclusively to issue the execution in such a case, it seems to me, it can no more be issued by an attorney than it could had the judgment remained before the justice. Being issued without authority of law, it was wholly invalid, and conferred no power upon the sheriff to transfer the title of the plaintiff's testator to any one.

I think the judge at special term was right also in holding that the defendant's proceedings upon the judgment were not stayed at the time the executions were issued. But upon the question of fraud (aside from the issuing of the execution by the attorney), I should find it exceedingly difficult to agree with the learned justice at special term.

Sutherland and Clerke, JJ., concurred.