Carshore *v.* Huyck.

---

SAME TERM. *Before the same Justices.*

### CARSHORE and others *vs.* HUYCK.

The statute requiring a justice of the peace, when removing from the town in which he was elected, to deposit his docket book with the town clerk, is merely directory; and his omission to do so, will not operate to the prejudice of a party, or prevent the docket from being received in evidence.

After a justice's judgment has become barred by the statute of limitations, it will be so revived by a new promise of payment, as that an action of debt may be maintained upon it, with the same effect as before the statute had attached.

Where the operation of the statute of limitations is avoided by a new promise, the *old demand,* and not the *new promise,* must be the foundation of the action.

As the new promise does not, as in the case of a promise to pay a debt discharged under the insolvent act, create a new liability upon a new contract, but merely removes the presumption of payment which the statute of limitations raises, it is immaterial to whom the promise is made.

Making partial payments is sufficient to take the demand, upon which such payments are made, out of the operation of the statute.

Under a plea affirming that the debt is barred by the statute of limitations, and a replication denying that fact, any evidence tending to show that the debt is not subject to the operation of the statute is pertinent to the issue.

Proof of a new promise is therefore not only pertinent, but conclusive, upon that issue in favor of the plaintiff.

Carshore *v.* Huyck.

This was an action of debt, tried at the Columbia circuit in December, 1848, before Justice Harris. The declaration was upon a judgment in favor of the plaintiff against the defendant, rendered by John Van Buren, Esq. a justice of the peace of the town of Chatham, on the 12th day of August, 1840, for $100,47. This suit was commenced on the 23d of November, 1847. The defendant pleaded 1. *Nul tiel record,* and 2. *Actio non accrevit,* &c. The plaintiff replied to the second plea, that the cause of action did accrue within six years next before the commencement of the suit.

Upon the trial, the plaintiff's counsel, to prove the judgment, offered in evidence the justice's docket. It was admitted that the justice who rendered the judgment was no longer in office, and had removed from the town. The defendant's counsel insisted that the docket could not be read in evidence, without proof that the same had been deposited with the town clerk, as directed by statute. The objection was overruled, and the defendant's counsel excepted. The plaintiff's counsel, having proved the judgment, then offered to prove that within six years, the defendant had promised one Michael T. Smith to pay the judgment. The evidence was objected to, 1. On the ground that, under the pleadings it was inadmissible ; 2. That a parol promise to pay would not revive a judgment so as to avoid the statute of limitations and enable the plaintiffs to declare on the judgment as an existing cause of action ; 3. That a promise made to a third person would not be available to the plaintiffs. The objections were overruled, and the defendant's counsel excepted. The plaintiffs then proved that in a conversation with Michael T. Smith, the defendant said he had, a short time before, paid $20 on the judgment, and would pay the rest of it when he returned from New-York ; that about two weeks afterwards the defendant requested the witness to tell Smith not to commence a suit, and that he would come up soon and pay the judgment. It was proved by another witness that the defendant, in the fall of 1847, told him he had shortly before paid Michael T. Smith $20 upon the judgment. The plaintiffs' counsel offered to prove by parol that Smith was the assignee of the

judgment. It being admitted that the assignment was in writing, the evidence was excluded, and the plaintiffs' counsel excepted.

The plaintiffs having rested, the defendant's counsel moved for a nonsuit, upon the following grounds: 1. That there was no sufficient proof of the existence of the judgment; 2. That the evidence was insufficient to avoid the plea of the statute of limitations.   3. That a parol promise would not revive the judgment, so as to avoid the effect of the statute ; 4. That under the pleadings the evidence did not entitle the plaintiffs to recover. .The court denied the motion, and the defendant's counsel excepted.   The evidence being closed, the court directed the jury to find a verdict for the plaintiffs for $113,98, subject to the opinion of this court.

*G. Van Santvoord,* for the plaintiffs.

*J. H. Reynolds,* for the defendant.

*By the Court,* HARRIS, J.   The statute requiring a justice, when removing from the town in which he was elected, to deposit his docket book with the town clerk, is merely directory. His omission to comply with this requirement could not operate to the prejudice of a party having no control over him.   The justice's docket was therefore properly received.

The principal, and I think the only question in this case, is whether, after a justice's judgment has become barred by the statute of limitations, it will be so revived by a new promise of payment, as that an action of debt may be maintained upon it. Incidentally a question of pleading is involved, but the decision of the question I have stated must determine the rights of the parties in this action.   The plaintiffs maintain the affirmative of this proposition.   Unless they can sustain it, their action must fail.   The defendant contends, that a promise to pay a judgment, cannot entitle the plaintiff in that judgment to maintain an action upon it, as a subsisting cause of action ; that a judg-

VOL. VI.                74

Carshore *v.* Huyck.

ment once barred by the statute of limitations can not have its vitality restored by a mere promise to pay.

The question is not without its difficulty ; and neither party is without eminent authority to sustain his position. It seems, however, to be settled against the defendant, in this state. Upon a full examination of the cases in which the subject has been discussed I am satisfied that, at least in this state, the doctrine is too firmly established to be again unsettled, that where the operation of the statute of limitations is avoided by a new promise, the *old demand,* and not the *new promise,* is to be the foundation of the action. I confess that were I at liberty to reason upon the question, the inclination of my mind would be to the other side of this question. The doctrine rests for its support upon a distinction between the cause of action itself, and the remedy. The distinction is too thin and subtle to be received with satisfaction. An existing, continuing cause of action, without any remedy to enforce it, is, to my mind, a mere abstraction. To say that a man has a cause of action left, after he has lost, by the operation of the statute, his remedy upon it, seems to me little less absurd, than to say I still have my property after I have actually lost it. If a debtor obtain a discharge under an insolvent act, a subsequent promise to pay the debt discharged, is regarded as a *new contract,* supported, it is true, by the pre-existing moral obligation, as a consideration for the new promise, but to be enforced *as a new contract,* and, like every other contract, according to its own terms. The reasonableness of this doctrine is much more manifest, at least to my mind, than that which has been established in this state in respect to the revival of debts barred by the statute of limitations. The best defense of the latter doctrine, with which I have met, is contained in the opinion of Mr. Justice Marcy, in *Dean* v. *Hewitt,* (5 *Wend.* 257.) His argument is, that the new promise rebuts the presumption of payment upon which the statute of limitations proceeds, and has the same effect, in keeping alive the remedy, whether made *before* or *after* the statute attaches. I am unable to perceive the conclusiveness of this reasoning. In the one case, the new promise, made before the

statute has barred the debt, arrests its course, and a new start-
ing point is made, from which it again commences to run.  It
cannot be said, in that case, that the new promise *revives* the
debt; for it never was *extinct*.  But when the statute has once
attached, the debt is *in fact*, however it may be in theory, *ex-
tinct*.  It has lost all its vitality.  If, afterwards, it has any
"legal use or validity," it is through the reanimating principle
of the new promise.  And it is only useful for this purpose, as
furnishing, by virtue of its continuing moral obligation, a suffi-
cient consideration for the promise.  But it would not be profit-
able further to examine the foundations of this doctrine.  It is
enough, for the present occasion, that the question is entirely
settled by adjudged cases in our own courts.  I cheerfully yield
to their authority, and even where I cannot clearly see the rea-
son upon which they are founded, I can say with Lord Kenyon,
"it is my wish and comfort to stand *super antiquas vias*." (*See
Sands* v. *Gelston*, 15 *John.* 511; *Bell* v. *Morrison*, 1 *Peters*,
351; *Depuy* v. *Swart*, 3 *Wend.* 135; *Soulden* v. *Van Rens-
selaer*, 9 *Id.* 293.)

The doctrine is perhaps as clearly stated in *Dean* v. *Hewitt*
as any where else.  "A demand," says Justice Marcy, "the
remedy, for the recovery of which is continued or revived by a
new promise, is precisely the same, after the remedy has been
continued or revived, as it was before the statute had or could
have attached."  In that case, the action was upon a negotiable
note.  The new promise relied upon to relieve it from the oper-
ation of the statute of limitations, was made to the *payee*.  It
was held, that the negotiability of the note was co-existent with
the demand, and that the remedy upon the note having been
revived, while the note remained in the hands of the payee, an
indorsee, to whom it had been subsequently transferred, might
maintain his action upon it.  The same was held in *Pinkerton*
v. *Bailey*, (8 *Wend.* 600;) also in *Soulden* v. *Van Rens-
selaer*, above cited.  If, then, the new promise so completely re-
stores life, and gives effect to the original demand, as in the case
of a negotiable instrument, to enable a subsequent holder, to
maintain an action upon it, I think it must follow, that in

Carshore *v.* Huyck.

case of a justice's judgment barred by the same statute, a new promise will enable the plaintiff in the judgment to maintain an action upon it, with the same effect as before the statute had attached. It is true, that all the cases in which the question has been presented were actions upon contract. It is only since the adoption of the revised statutes, that justices' judgments have been subject to the operation of the statute of limitations. (*Pease* v. *Howard,* 14 *John.* 479.) But if a new promise can have the effect of sustaining an action upon a negotiable security in the hands of an indorsee, to whom it has been transferred after the promise, much more should it have the effect to enable the plaintiff in a justice's judgment, to whom the promise was made, to maintain an action of debt upon it.

The objection that the promise relied upon was made to a third person, and not to the plaintiffs, can not avail the defendant. It is true, the plaintiffs failed to show that Smith, to whom the promise was made, was in fact the assignee of the judgment. But it has been held that, as the new promise does not, as in the case of a promise to pay a debt discharged under an insolvent act, create a new liability upon a new contract, but merely removes the presumption of payment which the statute of limitations raises, it is immaterial to whom the promise is made. This was decided in *Soulden* v. *Van Rensselaer.* See also *Oliver* v. *Gray,* (1 *Har. & Gill,* 204;) *Whitney* v. *Bigelow,* (4 *Pick.* 110.) Besides, it was proved that the defendant had paid $20 upon the judgment, a short time before the suit was brought, and it is well settled that partial payments are sufficient to take the demand upon which such payments are made out of the operation of the statute. In *Wenman* v. *The Mohawk Ins. Co.* (13 *Wend.* 267,) it was held that the giving of a note for the interest which had accrued upon a demand was sufficient to raise a new promise to pay the demand, and thus prevent the operation of the statute of limitations.

But it is insisted, that the evidence of a new promise, if it could operate to take the case out of the statute at all, could only have been given in support of an issue made in the pleadings upon such promise. But here too, I must dissent from the

---

position assumed by the defendant's counsel. The issue tendered by the plea and accepted by the replication, was upon the statute of limitations. The defendant affirmed, in substance, that the debt was barred, and the plaintiff denied it. Any evidence tending to show that the debt was not subject to the operation of the statute, was pertinent to the issue. The proof of a new promise, upon the principles already noticed, was not only pertinent, but was conclusive, upon that issue, in favor of the plaintiffs. This mode of pleading is approved by Chitty, (1 *Chit. Pl. 8th Am. ed. Spring. p.* 583,) and is, so far as my experience extends, the form uniformly adopted in similar cases. (*See Tompkins* v. *Brown,* 1 *Denio,* 247.)

Upon the whole case, therefore, the plaintiffs are, in my opinion, entitled to judgment.

Judgment for the plaintiffs.

