ROBERT T. JOHNSON, Receiver, etc., Appellant, *v.* THE ALBANY AND SUSQUEHANNA RAILROAD COMPANY, Respondent.

The statute of limitations acts only upon the remedy; it does not impair the obligation of a contract, or pay a debt, or produce a presumption of payment, but is merely a statutory bar to a recovery. It is a shield and not a weapon of offence, and so is ineffectual where a party seeks affirmative relief based upon allegations of payment. In such case payment in fact must be shown, notwithstanding the statute has barred the right of the other party to recover such payment.

E. was a subscriber for twenty shares ($2,000) of defendant's stock. He paid thereon $1,000; five calls for installments, of $200 each, he did not pay, and an action was brought against him therefor. He interposed the defence of the statute of limitations, which was held good as to four installments; but judgment was rendered against him for the last, which he paid. In an action to compel defendant to issue its certificate for the twenty shares subscribed for, *held*, that said judgment did not establish that the whole subscriptions had been paid or extinguished; it did establish E.'s obligation to pay the whole, but relieved him from the payment of $800, because the payment was not attempted to be enforced in season; and that, as the payment of the whole subscription was a prerequisite to a right to the certificate, plaintiff was not entitled to recover.

Statement of case.

Also, *held*, that as no tender had been made of the §800 unpaid, but, on the contrary, payment thereof had been refused, plaintiff was not entitled to a certificate for the amount of stock (twelve shares) paid for.

As to whether this court could grant such relief, even if proper, upon appeal from an order granting a new trial where no error had been committed in granting the new trial, and in view of the peremptory mandate of the statute (Code, § 11, sub. 2) requiring a judgment absolute against appellant upon affirmance, *quere.*

(Argued June 14, 1873; decided September term, 1873.)

Appeal from an order of the General Term of the Supreme Court in the third judicial department, reversing a judgment in favor of plaintiff entered upon the decision of the court at Special Term, and ordering a new trial. (Reported at Special Term, 40 How., 193; at General Term, 5 Lansing, 222.)

This action was brought by the plaintiff as receiver, etc., of John Edgerton, to compel the defendant to issue and deliver to him a certificate for twenty shares of its capital stock, for which the said Edgerton had become a subscriber on its formation, or to make payment of its value.

It is alleged in the complaint that the sum of $1,000 was paid, that five calls were made at different times for the payment of installments of $200 each, payable on said stock; but that said five installments were not paid, and that thereupon an action was commenced by the defendant against Edgerton in the Supreme Court of this State for the recovery of such installments; that the action was defended on the ground, among others, that more than six years had elapsed since said calls were made; that such defence was held good as to four of said calls, and not as to the fifth and last call for $200; that judgment was rendered, therefor, with the costs of the action, and that the amount so recovered was paid prior to the 23d day of September, 1867, being the day on which the plaintiff was appointed such receiver. The complaint then alleges that, after such appointment, the defendant proceeded to declare the said twenty shares of stock forfeited, and entered such

forfeiture on its books ; that the notice of sixty days required by the statute to be given preliminary to such forfeiture was served on Edgerton, but that no such notice was ever served on him, and that the defendant refused to issue a certificate for such stock or any portion thereof to the plaintiff on a demand made by him therefor.

The defendant, by its answer, stated that the statute of limitations was interposed to four only of the calls for the payment of installments, and not to the last or tenth in the action for the recovery thereof, and that such action was commenced on the 19th day of December, 1860, and that judgment was rendered and perfected thereon on the 13th day of November, 1863. The answer then alleges that proceedings were commenced by the defendant on the 7th day of April, 1868, for the forfeiture of the said stock by reason of the non-payment of the sixth, seventh, eighth and ninth installments, due and payable thereon ; and that the same was declared to be forfeited by a resolution of the directors passed on the fourteenth day of the following July, such installments not having then been paid, in the following terms, viz.: " Resolved, that the several individual stock subscriptions to this company, upon which the several installments have not been fully paid, and notice of which has been duly served upon the several subscribers, in pursuance of a resolution adopted by this board, April 7, 1868, be and the said stock is hereby forfeited, and all previous payments thereon, for the use of the company ; " that the name of Edgerton alone appears on its books as a subscriber to or as having an interest in its payment to such stock, and that said forfeiture was made without any knowledge or notice that the plaintiff had been appointed such receiver, or that he had any right or interest in the said stock. The judge who tried the issues found that Edgerton had paid ten per cent on his stock at the time of his subscription therefor, and also the second, third, fourth and fifth installments before the 12th day of December, 1860, when the action for the collection of the residue of such installments was commenced ; that the plea of the statute of limitations

was interposed therein to the sixth, seventh, eighth and ninth installments, which was sustained by the court; that a recovery was had for the tenth installment and costs, and that the amount thereof was subsequently paid in full by Edgerton to the sheriff of Delaware county, to whom an execution for its collection had been issued. He then found that the stock had been declared forfeited by the defendants, in proceedings had for that purpose, as stated substantially in the answer, and that it was worth at the time of such forfeiture fifteen or twenty dollars a share, and, at the time of the demand by the plaintiff for a certificate therefor, and when this action was commenced, ninety dollars a share.

He found as conclusions of law:

1st. That by the payments made by Edgerton, as above found by him, and by the recovery and collection of the said judgment, Edgerton "became the owner of said twenty shares of stock and was entitled to a certificate therefor."

2d. That the defendant had no right, thereafter, to proceed to a forfeiture of the said twenty shares of stock and to declare them forfeited.

3d. That if the right to do so did exist, such shares were not legally forfeited by the proceedings had for that purpose, for the reason that the resolution of forfeiture did not specify the stock in question.

4th. That the ownership of said stock and the right to the certificate for the same vested in the plaintiff as such receiver, on his being appointed such receiver as aforesaid.

5th. That the plaintiff had the right to receive from the defendant a certificate for said twenty shares of stock at the time the demand for the same was made.

6th. That the plaintiff was entitled to a judgment requiring the defendant to deliver to him, and in his name as such receiver, a certificate for said twenty shares of stock.

Judgment was entered accordingly.

*Amasa J. Parker* for the appellant. Defendant had a right to sue for and collect the installments, or to proceed,

under the statute, to a forfeiture of the stock; it could not do both. (*Small* v. *Herk. Mfg. Co.*, 2 Comst., 330–341; *Giles* v. *Hutt*, 2 Railway Cas., 505; 3 Exch. R., 18; *Cobden* v. *Eldredge*, 15 J. R., 220; *U. Turn. Co.* v. *Jenkins*, 1 Caine's Cas. in Er., 86, 95; *The Franklin Bridge Co.*, 2 Bibb., 576; *River Nav. Co.* v. *Neale*, 3 Hawks., 520.) Neither a tender 'nor offer to pay was necessary to the sustaining of this action. (*Bruce* v. *Tilson*, 25 N. Y., 194; *Beach* v. *Cooke*, 28 id., 508; *Schemerhorn* v. *Talman*, 14 id., 143; *Miner* v. *Beekman*, 11 Abb. [N. S.], 147; *Beecher* v. *Ackerman*, 1 Robt., 38.) An action may be brought for a wrongful refusal to issue a certificate of stock, though no transfer has been made on the books of the company as required by the charter and by-laws. (*Baltimore* v. *Sewell*, 7 Ames, 402; 35 Md., 238; *Bk. of Utica* v. *Smalley*, 2 Cow., 770; *Kortright* v. *Buff. Bk.*, 20 Wend., 91; *Mech. Bk.* v. *N. Y. and N. H. Co.*, 13 N. Y., 624.) The proceedings not being in strict conformity with the statute, the forfeiture is a nullity. (*East. Plank-road* v. *Vaughan*, 20 Barb., 156, 157, 161.)

*N. C. Moak* for the respondent. The statute of limitations barred the remedy only; the debt or liability remains, and is not extinguished. (*Waltermire* v. *Westover*, 14 N. Y., 20, 21; *Watkins* v. *Stevens*, 4 Barb., 178, 179; *Phillips* v. *Peters*, 21 id., 351, 358; *Winchell* v. *Bowman*, id., 448; *Higgins* v. *Scott*, 2 B. & A. [22 E. C. L. R.], 413; *Brickett* v. *Davis*, 21 Pick., 410; *Courtenay* v. *Williams*, 3 How., 551, 552; *Shears* v. *Hartley*, 3 Esp., 81; *Jones* v. *Mer. Bk.*, 4 Rob., 227; *Heyer* v. *Pruyn*, 7 Paige, 465; *Morey* v. *Farmers, etc.*, 14 N. Y., 302; *Lawrence* v. *Ball*, id., 477.) Defendant had a right to forfeit the stock, and by selling it to realize the balance due. (*Pratt* v. *Foote*, 9 N. Y., 463; *Beach* v. *Smith*, 30 id., 131; *Pattison* v. *Guards., etc.*, 1 H. & N., 523.) Edgerton had a right to vote on the stock, although he had not paid in full for it. (*People* v. *A. and S. R. R.*, 7 Abb. [N. S.], 306; A. & A. on Corp., § 113,

note; *Downing* v. *Potts*, 3 Zabr. [N. J.], 66; *Curry* v. *Scott*, 54 Penn. St., 270; Abb. Dig., Corp., 747, § 111; Laws 1850, 213, § 4; 3 Edm. St., 618; Laws 1854, 608, § 5; 3 Edm. St., 640.)  Notice that payment of his subscription for the stock was required was properly served on Edgerton, as the stock stood in his name on the books.  (*Graham* v *Van Dieman's Land Co.*, 1 H. & N., 541; *S. Staff. R. Co.* v. *Burnside*, 5 Exch., 129; *Rosevelt* v. *Brown*, 11 N. Y., 152, 153; *McDaniels* v. *Flour, etc.*, 22 Vt., 274, 284; *President, etc.*, v. *Cook*, 4 Pick., 405; *Cady* v. *Potter*, 55 Barb., 463; *Galbraith* v. *Cooper*, 8 H. L. Cas., 315; *Bank* v. *Lanier*, 11 Wall., 369.)  An assignee of stock must procure its transfer on the books of the company before he becomes a stockholder.  (*Cady* v. *Potter*, 55 Barb., 463; *Ex parte Hall*, 1 MacN. & G., 307; Laws 1850, 214, § 8; 3 Edm. Stat., 619; *Mann* v. *Currie*, 2 Barb., 299; Bouv. Dict., tit. " Stocks ;" *Union Bk.* v. *Laird*, 2 Wheat., 393; Grant on Corp., 207, note *k; The King* v. *Trevener*, 2 B. & A., 339; *Wordsworth J. S. Cos.*, 204, 300, 301, marg. page [39 Law Lib.]; *McDaniels* v. *Flour, etc.*, 22 Vt., 274, 284.)  He is not entitled to vote on the stock until after a transfer has been made.  (*Ex parte Wilcocks*, 7 Cow., 402; *In re Barker*, 6 Wend., 509; *Wordsworth J. S. Cos.*, 307, marg. page.)  The notice to Edgerton was good, notwithstanding the summary it contained did not give him credit for the $200 recovered on the judgment.  (*Bangs* v. *Duckinfield*, 18 N. Y., 598; *Rublee, etc.*, v. *Hovey*, 9 Abb. [N. S.], 74; *Burns* v. *Bryant*, 31 N. Y., 453; *People* v. *Shackus*, 48 Barb., 551.)  It was not necessary for the final resolution of forfeiture of stock to specifically name the stockholders whose stock was thereby forfeited.  (Broom's Leg. Max., 599, marg. page, and authorities cited; id., 600, 601, citing *Owen* v. *Thomas*, 3 Myl. & K., 353; *Bangs* v. *Duckinfield*, 18 N. Y., 598; *Sands* v. *Sanders*, 26 N. Y., 244, 245; 26 How., 89; 28 N. Y., 423.)  Plaintiff and Edgerton were guilty of laches, which precluded a recovery.  (*Woollastin's Case*, 4 D. G. & J., 437; Story on Bail., §§ 346, 362; Smith's Manual of Eq., 19; 2 Story's Eq. Jur., §§ 1520, 1522.)  Plaintiff was bound

to offer to pay the amount due and unpaid before bringing the action. (*Seagrave* v. *Pope*, 1 D. G., McN. & G., 783 ; *Moseley* v. *Baker*, 6 Hare, 87 ; affirmed 18 L. J., Ch., 457.)

LOTT, Ch. C.    It is conceded by the plaintiff's complaint, and found by the findings of the judge, that four installments due on the subscription of Edgerton for the stock in question were never *in fact* paid ; but the learned judge who tried the issues at Special Term holds, in his opinion as reported (40 How. Pr. Rep., 193), that the judgment rendered in the action to recover those installments, and the last one that was payable, " decides, beyond the right of dispute, that Edgerton owed the company at that time on his whole subscription only the amount of the recovery," which was for the sum due on the last installment ; and that when " he paid the execution," issued on the judgment, " he paid the company all that he owed on his stock subscription."    Notwithstanding the opinion of that learned jurist, so positively expressed, I nevertheless must, and do, dispute the proposition stated by him in reference to the effect of that judgment.    Although several grounds of defence were set up against the right of the company to recover in that action, it is admitted that the only defence which was successful was that of the statute of limitations to the four installments referred to.    It is, however, claimed and asserted in that opinion, that it is of no consequence whether Edgerton's defence was payment, or set-off, or the statute of limitations, and that it is enough that the judgment decided that he entered into the contract and established the amount remaining due upon it.    The fallacy of that position is in *assuming* that the judgment decided and determined that the sum recovered was all that *remained due* on the subscription to the stock, and that all the installments—payable previous to that for which the recovery was had—were actually paid ; thus giving the same effect to the statute of limitations as if payment had, instead thereof, been interposed as a defence.    This is not sound or tenable.    The complaint, as I have already stated, conceded that the four

installments referred to *had not been paid* when the action to recover them and the last one called for was commenced; and it states that the action was defended by Edgerton " on the ground, among others, of the statute of limitations; that is to say, that more than six years had elapsed since said calls were made, that such defence was held good as to four of said calls, and not as to the fifth and last call for $200." This statement truly and fully sets forth and explains the nature and character of the defence.   There was no claim that the installments had in fact been paid or in any manner satisfied.   It, in effect, admits the contrary, and only alleges that although the claims and demands for which the action was brought were unpaid and unsatisfied, yet, inasmuch as they accrued more than six years before its commencement, a recovery thereof could not be enforced, by reason of the statute requiring such claims and demands to be sued for within six years after the right to do it arose.   Indeed, the judge, in his findings of fact, finds affirmatively " that neither the said John Edgerton, nor any one, ever actually paid any further or other sum, upon or by reason of his subscription or stock, than the sum paid at the time of such subscription, and the second, third, fourth and fifth installments, paid before the commencement of the action, and the amount collected on the judgment recovered against him therein; and he also found that on the trial thereof, on said Edgerton's motion, the court ruled and decided that the sixth, seventh, eighth and ninth installments of $200 each, and interest, did not, nor did either of them nor any part thereof *accrue* to the plaintiff in said action (this defendant) within six years next before the commencement of said action, and the plaintiff therein (this defendant) had a verdict therein for the tenth installment only, and interest thereon, amounting to $320.45; and afterward, on the 9th day of December, 1873, judgment was duly entered and perfected in said action for $320.45 damages, and $141.86 costs;" and the judgment roll, to which the judge referred in his findings, shows that it was adjudged by the court that the said plaintiff recover

of the said Edgerton the said damages and costs, amounting, in all, to $462.31, and that *no other* adjudication was made thereby.

It is evident from what has been said that the judge did not, at Special Term, find or intend to find that the whole of the subscription price was actually paid; and it is well settled that the statute of limitation acts on the *remedy* merely, not upon the *debt*, and, therefore, does not impair the obligation of the contract. (See *Waltemire* v. *Westover*, 4 Kern., 16, and cases therein cited.) It was said by SELDEN, J., in that case, that this distinction is " virtually included in the doctrine universally received and acted upon, that where there is a new promise to pay a debt barred by the statute of limitations, it is not necessary to count upon this as a new contract, but the action may be brought upon the original obligation," adding that " this practice can only be sustained upon the ground that the debt is not discharged, and that the operation of the statute upon the remedy being removed by the new promise, the parties are left in *statu quo*." He also says that the statute " does not operate, according to the recent cases, by producing any presumption of payment, but is a mere statutory bar, founded in principles of public policy," and it was, on the application of that principle, held that a statute, which provided that all actions upon justices' judgments should be commenced within six years after the cause of action accrued, did not annihilate the lien of such judgment, duly docketed, at the end of six years, and that a purchaser at a sale of real estate after the lapse of that time, but within ten years, under an execution issued thereon, acquired thereby the title of the judgment debtor.

It follows from these views that the judgment in the action by the defendant against Edgerton, although conclusive against its right to recover and *collect* anything more *by action* of Edgerton on his subscription, does not establish or show that the whole of it is paid or extinguished, and has no effect or operation whatever on that question. The case, therefore, stands upon the admission in the complaint, and the finding

of the ·judge, that four installments called for, and due and payable, have never been paid. The payment of those was necessary to entitle the plaintiff to the certificate for the stock in question. It was decided in the case of *Morey* v. *The Farmers' Loan and Trust Company* (4 Kernan, 302), that the presumption of payment, arising from the lapse of twenty years after the making of a contract for the sale of land, was not sufficient proof of payment to entitle the purchaser to a decree for specific performance of the agreement, but that the party seeking such relief must show affirmatively that he has performed the contract by actual payment of the purchase money, and it was said that such a presumption was designed *simply* as a *defensive* weapon and as a shield against attack, and that no case could be found in this State which countenances the doctrine that a party in a court of equity may avail himself of it for affirmative action.

The same principle was recognized and asserted in *Lawrence* v. *Ball* (4 Kernan, 477).

The General Term, on the authority of those cases, as well as on the nature and character of the defence of the statute of limitations, properly held that the court at Special Term erred in deciding that Edgerton, by reason of the payments actually made by him, as above stated, and by the recovery of the same judgment against him and its collection, became the owner of the stock in question, and entitled to a certificate therefor. This conclusion renders it unnecessary to consider the question as to the validity and effect of the proceedings taken for the forfeiture of said stock.

The order of the General Term reversing the judgment on that decision and ordering a new trial must, on the ground stated, be affirmed, and judgment absolute must be rendered against the plaintiff in pursuance of his stipulation or assent to that effect, with costs, payable to the defendant in both courts.

REYNOLDS, C. In June, 1852, John Edgerton, who is represented by the plaintiff in this action, subscribed for

twenty shares of the capital stock in the defendant's company, and paid ten per cent at the time, and agreed to pay the balance when called for by the defendant's directors. In the month of May, 1853, the directors of the defendant called for the payment of a further ten per cent on the first of September next following, and thereafter ten per cent every sixty days until the whole amount subscribed for was fully paid. Edgerton paid the second installment of $200 on the 20th of April, 1855, and the third, fourth and fifth, amounting in the aggregate to $600, on the 1st day of May, 1860. Edgerton declining to make any further payments, the defendant, on the 12th of December, 1860, commenced an action against him for the balance upon his subscription, being in the aggregate the sum of $1,000. In that action Edgerton interposed the defence of the statute of limitations, and on that issue succeeded as to every installment but the tenth, and for that $200, interest and costs, judgment was rendered against him. This left $800 due upon his subscription, unless it was paid by the judgment in the action referred to, upon the successful plea of the statute of limitations. Edgerton having apparently fallen into some pecuniary disaster, the plaintiff, as receiver, became vested with all his legal and equitable interests, and he now appeals to a court of equity for a certificate of twenty shares of the capital stock of the defendant's company, when, in fact, at least $800 and interest remains unpaid, and is to be regarded paid, if at all, only by a fiction of the law. If the law shall determine that the judgment relied upon has paid the debt, so that the plaintiff is entitled to the same equitable remedies as if he had in fact paid the amount due, it must be so adjudged, and he must be awarded his remedy.

In my judgment, the claim of the plaintiff is not supported by any principle that should give it any consideration in either a court of law or equity. The statute of limitations never paid a debt, although it barred a remedy. (*Dean* v. *Hewit,* 5 Wend., 257; *Pinkerton* v. *Bailey,* 8 id., 600; *Soulden* v. *Van Rensselaer,* 9 id., 293; *Sands* v. *Gelston,* 15 J. R.,

511; *Bell* v. *Morrison*, 1 Peters, 351; *Carshore* v. *Huyck*, 6 Barb., 583.) The moral obligation to pay always remains, although the remedy cannot be enforced in the courts. This moral obligation was always a good consideration for a subsequent promise to pay. (*Vide* cases *supra;* also *Ehle* v. *Judson*, 24 Wend., 97; *Scouton* v. *Eislord*, 7 J. R., 36; *Shippey* v. *Henderson*, 14 id., 178; *Ingersoll* v. *Rhodes*, Hill & D. Supp., 371.) Some distinction has been suggested, mainly upon the question of pleading, between a debt barred by the statute of limitations and the obligations of a debtor discharged under the insolvent laws; but it is, I think, nowhere held that a debt is paid because the remedy of the party to enforce it is suspended or gone. At all events, it is not too much to say that a party who claims to have paid a debt by a successful plea of the statute of limitations, and seeks an affirmative remedy on the ground of such a fortunate venture, is not to be regarded as the especial favorite of a court of equity.

I am not able to discover any difference in the effect to be given to the allegation that a remedy has been barred by the statute of limitations, whether it is proved by parol evidence or established by the record of a judgment. In either case the fact is precisely the same, and the mode of proof does not appear to be material. The judgment could only be the more effective if it extinguished the debt or the moral obligation to pay; but by the law of this State it does not have that effect. This statute, it may be suggested, can be used as a shield, but not as an aggressive weapon, and is entirely like the statute giving the presumption of payment in respect to a sealed obligation after twenty years. It is available as a bar to an action, but ineffectual where a party seeks affirmative relief, based upon the fact of payment. Where such relief is sought, payment in fact must be shown. An insolvent's discharge or a successful defence of the statute of limitations will not answer. These principles will be found approved in many adjudged cases. (*Waltermire* v. *Westover*, 14 N. Y. 16; *Morey* v. *Trust Co.*, id., 302;

*Lawrence* v. *Ball,* id., 477; *Carshore* v. *Huyck,* 6 Barb., 583, and cases cited.)

Whether the stock subscribed for by Edgerton was legally forfeited to the use of the company may present another and different question, which will have to be disposed of when, if ever, it shall arise. If Edgerton or his receiver shall ever pay or offer to pay the $800 actually due, with interest, and the company should refuse to issue the stock demanded, it may be that other questions will have to be determined. It has been suggested that the plaintiff should be awarded a certificate for twelve shares of stock, for which payment in fact has been made, and that the judgment of the Special Term might be modified to meet this suggestion. But this cannot be done, as no such question in any form was before the court below. The plaintiff put himself upon the hazard of obtaining eight shares of stock, for which he had in fact not paid and did not propose to pay any money. He never offered to take a certificate for twelve shares, and if he had, we do not propose to consider whether the company would have been bound to issue it. It claimed the power to forfeit the right of the plaintiff to any stock for the failure to pay the balance of his subscription, and attempted to exercise that authority; and the legal effect of that effort we do not consider. It is sufficient for the present that we find satisfactory reasons for affirming the order of the General Term and ordering judgment absolute against the plaintiff, with costs.

All concur.

Order affirmed, and judgment accordingly.

At the January term, 1874, a motion was made by appellant for a reargument of this cause, upon which the following opinion was given—REP.

*By the Court,* REYNOLDS, C. We are earnestly requested by the counsel for the plaintiff to modify our judgment in this case, given at the last term, so far at least as that the

plaintiff may, in some form, have the benefit of the actual payment of $1,200 upon the subscription of Edgerton for twenty shares of the stock of the defendant's company, which required the payment of $2,000, the fact being that $800 of this amount never was paid according to the contract, and never has been offered to be paid by Edgerton or the plaintiff.

The form in which the case comes before us is, I think, not as favorable to any equities the plaintiff may be supposed to have, as it possibly might otherwise have been. The plaintiff claimed that he was entitled to twenty shares of the capital stock in the defendant's corporation, and in this claim he succeeded at a Special Term in the Supreme Court. On an appeal by the defendant, a General Term of that court ordered a new trial, and the case came before us, upon an appeal by the plaintiff from that order, upon the usual stipulation for final judgment against him in case the order should be affirmed. After a very careful examination, we came to the conclusion that the order appealed from should be affirmed, and ordered final judgment against the plaintiff. This judgment was given under a peremptory mandate of the statute (Code, § 11, sub. 2) that, if no error had been committed in granting the new trial, a final judgment must be awarded according to the stipulation.

It has been held, under the very large power conferred by section 12 of the Code of Procedure, that it was the duty of a General Term of the Supreme Court, *where the facts require it,* to reverse a judgment as to one or more of several defendants, and affirm it as to others. (*Gardner* v. *Ogden,* 22 N. Y., 327; *Hubbell* v. *Meigs,* 50 id., 480.) A reference to these cases will show that this rule was adopted without the slightest apparent consideration of the provisions of subdivision 2 of section 11 of the Code; but it is sufficient for us that it has been so decided in cases where separate judgments may be ordered for or against separate defendants. As to the modification of a judgment, in the case of a sole defendant, upon an appeal of this character, we might find some difficulty; if the determination of that question was necessary

to the proper disposition of this motion. But, we think, it is not. And, indeed, it may be said that this application is not strictly within any rule of practice on motions for a reargument; but, as our judgment is challenged with earnestness and apparent sincerity, we prefer, for a moment, to reconsider it. It is not necessary to repeat the facts in great detail. Edgerton subscribed for twenty shares of stock in the defendant's company, which required him to pay $2,000, as it should be called for by its directors. He paid $1,000 on this subscription, and then absolutely declined further performance. The result was a suit against him by the company to recover five installments of $200 each, to which, among other things, he interposed a defence of the statute of limitations. This plea was successful as to four of the installments sued for, but unsuccessful as to the fifth, and judgment was had against him for $200, interest and costs, which he paid. It, therefore, happened that Edgerton was compelled to pay on his subscription $200 more than he ever intended to pay, and, but for the statute of limitations, he would have been ordered to pay $800 more. This judgment establishes his obligation to pay the full sum of $2,000 upon his subscription, but he is relieved from the payment of $800, because the defendant did not prosecute him in due season. In this condition of things the plaintiff, after some lapse of time and change of circumstances in respect to both parties, demanded a certificate for twenty shares of the stock of the defendant, and this was refused, and this action was brought to enforce that demand, no offer having been made to pay the balance of $800 yet due on the subscription of Edgerton. This demand was approved at a Special Term of the Supreme Court, and the plaintiff had judgment. At General Term this judgment was reversed and a new trial ordered, and from this order the plaintiff appealed, giving the usual stipulation. We thought at the last term this order was right and directed the necessary judgment. If, when Edgerton had paid for ten shares of the twenty he had subscribed for of the stock of the defendant's company, he had called at the

defendant's office and said he would pay no more money, and wanted a certificate of stock for ten shares, and it had been refused him, no one would claim that any court would or should have given him what he demanded.

As an original question it is difficult to see how the plaintiff is now in any better position. The refusal of Edgerton to perform his contract was maifested in the most positive form, in his defence of the suit brought against him for the recovery of one-half of the amount due upon his subscription for stock. He sought to repudiate his obligation, and did succeed to the extent of exactly $800. This sum we have not and do not regard as an actual payment, and so we have decided, for reasons before assigned. It thus appears that, for reasons satisfactory to himself, Edgerton refused to perform his contract with the defendant, and we have not been able to discover what further duty was due from it to him or the plaintiff.

The real difficulty on the present motion is that the plaintiff has no substantial merit. He wanted twenty shares of stock, to which it must be conceded he was not entitled. If he wanted twelve shares he never asked it, and was not entitled to it. He wanted twenty shares, and had not paid $800 that was due, and it was not offered to be paid. There was no obligation on the company to issue the stock, without the equivalent, under any circumstances. It hence follows that, when this action was commenced, the plaintiff was not entitled to any relief whatever.

The cases to which we are referred, holding that the courts may give any relief to a party to which he may be entitled upon the facts of his case, without regard to the prayer of his complaint, do not appear to aid the plaintiff on this motion.

The only error committed was at the Special Term, which the General Term corrected by granting a new trial.

If the plaintiff had gone back for a new trial, it may be possible that the case might have got into some position more favorable to him. We think no case was made, as the

record now stands, entitling the plaintiff to relief anywhere, and it would be very inconsistent for us to reverse or modify an order or judgment which we regard as entirely correct. The case shows, and the fact cannot be disguised, that at a time when the defendant was in pecuniary extremity, and its stock comparatively worthless, Edgerton refused to perform his contract and pay the amount due on his subscription for stock. When sued for its recovery in the courts, he resisted with success, upon the plea of the statute of limitations, to the extent of $800. Long afterward, when a change of condition had made the stock of the defendant valuable, the plaintiff, as the representative of Edgerton, demands a certificate for twenty shares of stock, when money equal to twelve shares only had been paid, and we held the demand was properly refused. What questions might have arisen if a tender had been made of the unpaid $800 and interest we cannot consider. We have only to dispose of the case as it appears to us on the record, and on that we find no occasion to interfere with the judgment previously rendered.

The motion is denied, with ten dollars costs.

All concur.

Motion denied.